J-S27021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GENNARO RAUSO | : | |
| | : | |
| Appellant | : | No. 1792 EDA 2017 |

Appeal from the Order April 24, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0001821-2010

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY SHOGAN, J.:                **FILED NOVEMBER 08, 2018**

Appellant, Gennaro Rauso, appeals from the April 24, 2017 order denying his June 9, 2016 motion to vacate the August 10, 2011 order of restitution.  In addition, Appellant's counsel has filed a petition to withdraw as counsel and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We permit counsel to withdraw and affirm.

The trial court summarized the extensive history of this case as follows:

> A criminal complaint was filed on September 23, 2009, by Corporal Christopher Kennedy, Norwood Police Department, charging Gennaro Rauso (hereinafter referred to as "Rauso" and/or ["Appellant"]) with, *inter alia*, theft by deception[1] and deceptive business practices.[2]  On this same date (September 23, 2009), the magisterial district judge issued for [Appellant] a bench warrant. . . .

---

[1] 18 Pa.C.S. § 3922.

[2] 18 Pa.C.S. § 4107.

\* \* \*

On August 10, 2011, [Appellant] entered a counseled, negotiated guilty plea to Information B-Theft by Deception, a felony of the third degree, and Information E-Deceptive Business Practices, also a third degree felony. N.T. 8/10/11, pp. 11-13. The prosecution consistent with the plea agreement's terms orally motioned, of-record, to amend its past filed criminal informations to recognize [K]arla Murray[1] as an additional victimized owner of property, who incurred a financial loss, and that Information E (deceptive business practices) also be amended to reflect an amount at issue over two-thousand ($2,000.00) dollars, as well as a resultant third degree felony gradation. These

_____

[1] Ms. Murray's given name is misspelled throughout the record and appellate briefs. N.T., 3/10/10, at 4. Also, for purposes of clarity, at the guilty plea hearing, the Commonwealth stated as follows:

There is restitution owed to [Karla] Murray in this matter, Your Honor, in the amount of $6,500. So the [c]ourt's aware, that restitution was pre-paid by [Appellant] during the course of this proceeding, as been—being held in escrow by Court Financial Services. I do have a stipulation that's signed by [defense counsel] and myself, and I would ask the [c]ourt to enter the stipulation as an Order of the [c]ourt, releasing that $6,500 funds to Ms. [Karla] Murray, who's present in the courtroom here, Your Honor, along with the other victim in this matter, Ms. Brandy Murray. . . .

\* \* \*

Your Honor, I need the record to be clear, I would need to make a Motion to amend the Informations that [Appellant] is pleading to. The victim's name was in the Information list, Ms. Brandy Murray only. Property, the money put up for the rental of the house was actually both Ms. Brandy and [Karla] Murray's property, so I would make a Motion to amend that Information as well.

N.T. (Guilty Plea), 8/10/11, at 5–6.

Commonwealth amendment applications were allowed, absent defense objection. N.T. 8/10/11, pp. 5-7. . . .

Immediately subsequent to his entering this plea of guilty and his attorney waiving such an investigation, [Appellant] was sentenced wholly consistent with the lawyers' plea negotiations as follows: Information B (Theft by Deception)-A term of eighteen (18) through thirty-six (36) months incarceration at a state correctional facility; and Information E (Deceptive Business Practices)-A fifteen (15) through thirty-six (36) month period of imprisonment at a state correctional institution. [Appellant] . . . was not entitled to any time served credit and was deemed for recidivism risk reduction incentive consideration[13] ineligible, without defense opposition. N.T. 8/10/11, pp. 8, 22. Additionally, per the plea understanding, these sentences were directed to run consecutively to each other (Informations B and E), but the entirety of [Appellant's] sentence at bar was ordered to be served concurrently with his June 20, 2011, sentence past imposed by the District Court of the Eastern District of Pennsylvania under docket, *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001, an aggregate period of incarceration of one hundred sixty (160) months followed by three (3) years supervised release. *See* Certificate of Imposition of Judgment of Sentence. N.T. 8/10/11, pp. 20-22. . . .

[13] 61 Pa.C.S. §§ 4501 *et seq*.

No timely or post-sentence motions otherwise were lodged, including any pleading advancing a challenge to the sentence's legality and/or a request to withdraw [Appellant's] previously entered negotiated guilty plea. No direct appeal to the Superior Court of Pennsylvania was filed.

In the course of his ongoing collateral litigation before this court,[14] [Appellant] on June 9, 2016, lodged a Motion to Vacate August 10, 2011 Restitution Order [etc. and for the Return of Said Restitution], as well as a Brief in Support. . . .

[14] [Appellant] on July 16, 2012, lodged a self-represented Petition for Post Conviction Collateral Relief [("PCRA")]. *See* [Appellant's] PCRA Petition dated July 16, 2012. This petition being his first such collateral pleading [Appellant] was entitled to counsel's assistance. . . .

- 3 -

[Appellant] was previously court designated two (2) lawyers material to the PCRA proceedings. Following the respective breakdowns of attorney-client relations between [Appellant] and these lawyers, he per such an application was permitted to proceed *pro se* with . . . "standby counsel." . . . N.T. 8/28/15; Order dated September 1, 2015. *See also Commonwealth v. Grazier*, 552 Pa. 9, 12-13, 713 A.2d 81, 82 (1998). *See generally* Pa.R.Crim.P. 121.

Following the filing of his initial collateral petition, [Appellant] lodged a plethora of various self–represented and a significantly lesser number of counseled pleadings during his PCRA litigation. . . .[2]

At the listing of June 14, 2017, *inter alia*, [Appellant] orally advanced, of-record, an application for the re-appointment of Post Conviction Relief Act counsel. N.T. 6/14/17.

Via an order dated June 15, 2017, this court designated William P. Wismer, Esquire as [Appellant's] collateral attorney[3] and directed he file an amended PCRA pleading. . . . This court through another order also of June 15, 2017, relatedly allowed that Mr. VanRensler was relieved of his past appointment as [Appellant's] "standby counsel." . . .

\* \* \*

[Appellant] on July 17, 2017, lodged his Amended, Counseled Petition for Post Conviction Relief. . . .

An evidentiary hearing as then scheduled in the above-captioned matter regarding [Appellant's]

_____

[2] The trial court listed forty-seven filings by Appellant dated from July 16, 2012, through July 17, 2017.

[3] The PCRA court thus appointed three different counsel to represent Appellant during the PCRA proceedings.

counseled, amended PCRA filing commenced and concluded on August 8, 2017. . . .

At the beginning of this proceeding . . . [Appellant] opted to appear and participate at this hearing (August 8, 2017) via telephone, an election consistent with his stated and preferred such practices. . . . N.T. 8/8/17, p. 5-6. . . .

Per an order dated August 9, 2017, this court denied [Appellant's] Amended, Counseled Petition for Post Conviction Relief. . . . [Appellant] did not lodge an appeal from this court's denial of his amended, counseled PCRA petition.

The court on February 10, 2017, entered a hearing notice for February 24, 2017, relevant to, *inter alia*, [Appellant's] Motion to Vacate August 10, 2011 Restitution Order . . . .

[Appellant] on February 22, 2017, filed a Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order. . . .

As past listed, a hearing regarding, *inter alia*, [Appellant's] motion to vacate the restitution order commenced and concluded on February 24, 2017, before this court. N.T. 2/24/17.

By an order dated February 27, 2017, the court denied [Appellant's] Motion to Vacate August 10, 2011 Restitution Order. . . .

On March 22, 2017, [Appellant] filed a Motion to Vacate, Rescind . . . [t]his [c]ourt's February 27, 2017 Order Denying [Appellant's] Motion to Vacate August 10, 2011 Restitution Order . . . .

In an effort to timely resolve this then most recent lodging (March 22, 2017) and recognizing the same was a defense filing, as well as the logistical challenges of scheduling at bar electronic proceedings,[15] the court set this reconsideration motion to also be addressed at a hearing already in place for March 30, 2017. . . .

[15] [Appellant] throughout the collateral litigation and restitution payment challenge before this court was

- 5 -

incarcerated at FCI Schuylkill resulting from his June 20, 2011, sentence past imposed by . . . *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001. . . .

As the order denying the challenge to his restitution payment obligation [Appellant] sought to have revisited was entered on February 27, 2017, this court only retained its jurisdiction requisite to reconsider this motion pursuant to 42 Pa.C.S. §5505 (Modification of Orders) through March 29, 2017. This court to preserve the jurisdictional authority necessary to that which it believed stemming from the then listed reconsideration hearing to be a next proper course of action was thus constrained to vacate the original order of denial (February 27, 2017), address any such concerns at the upcoming hearing (March 30, 2017), and again review its February 27, 2017, order in light of the same following of this scheduling's (March 30, 2017) conclusion. . . .

A hearing regarding, *inter alia*, the Motion to Vacate, Rescind . . . [t]his [c]ourt's February 27, 2017 Order Denying [Appellant's] Motion to Vacate August 10, 2011 Restitution Order . . . began and ended on March 30, 2017, before this court. N.T. 3/30/17.

Resulting from the March 30, 2017, listing, the court through an order of April 24, 2017, reinstated its February 27, 2017, order denying [Appellant's] Motion to Vacate August 10, 2011 Restitution Order . . . . N.T. 2/24/17; and N.T. 3/30/17.[4]

The then self-represented [Appellant] lodged on May 4, 2017, a notice of appeal[16] from this court denying the motion to vacate his restitution sentencing payment obligation, as well as his vacating of restitution reconsideration's subsequent denial.[17]

> [16] [Appellant] on May 4, 2017, contemporaneously lodged a second appeal notice stemming from this court denying his application for the amendment of

---

[4] To recap, following the February 24, 2017 hearing, the trial court denied Appellant's motion for return of restitution on February 27, 2017. On March 24, 2017, the trial court vacated the February 27, 2017 order and held another hearing on March 30, 2017. On April 24, 2017, the trial court reinstated the February 27, 2017 order, and Appellant filed the instant notice of appeal to this Court.

the certificate of imposition of judgment of sentence and his sentencing certificate amendment reconsideration's refusal. *See* Notice of Appeal dated May 4, 2017, and Superior Court No. 1460 EDA 2017 . . . . (This appeal . . . was withdrawn by [Appellant] through his lodging of such a Praecipe for Discontinuance on August 25, 2017. . . .

By an order of June 9, 2017, the Superior Court recognized that [Appellant] had past filed (2) notices of appeal, but for whatever the reasons its prothonotary's office was only in receipt of one (1) appeal notice. *See* Superior Court No. 1460 EDA 2017, Order dated June 9, 2017. The appellate court via its order (June 9, 2017) thus directed the trial court to forward "... any other notice of appeal in its possession filed by Appellant." *See* Superior Court No. 1460 EDA 2017, Order dated June 9, 2017. This court per an order of June 13, 2017, instructed "... that the Delaware County Office of Judicial Support SHALL IMMEDIATELY send to the Pennsylvania Superior Court's Prothonotary [Appellant's] Notice of Appeal dated May 4, 2017, relevant to this court denying [Appellant's] motion to vacate his restitution sentencing payment obligation, as well as his vacating of restitution reconsideration's denial. . . .

[17] Although the relevant Pennsylvania rule of appellate procedure provides a trial court may instruct a defendant to lodge a statement of error assignments, it is not required to take such action. *See* Pa.R.A.P. 1925(b) . . . .

Requiring on the salient record no such additional clarification, . . . this court has elected not to direct [Appellant] to lodge an appellate complaints statement. . . .

Trial Court Opinion, 12/29/17, at 1–5 (some footnotes and internal citations omitted).

On June 28, 2017, Appellant, *pro se*, filed an application to consolidate his two appeals, the instant appeal and the appeal at Superior Court Docket Number 1460 EDA 2017. We denied the request to consolidate on August 1, 2017. Present counsel, appointed by the common pleas court on June 15, 2017, entered his appearance in this Court on August 11, 2017. On August 25, 2017, counsel filed a praecipe to withdraw the appeal docketed at 1460 EDA 2017, and we discontinued the appeal that day.

As noted *supra*, on March 6, 2018, Appellant's counsel filed an application to withdraw and an **Anders** brief. On April 2, 2018, *pro se* Appellant filed a "Letter of Intent to Oppose Anders," which our Prothonotary filed as Appellant's "Answer to Application to Withdraw as Counsel." Thus, when this Court received Appellant's request for an extension of time to file his response to counsel's request to withdraw, or "Answer," we denied the request as moot by order dated May 18, 2018. Appellant filed a second application for relief requesting an extension to file his response to counsel's petition to withdraw, explaining that his April 2, 2018 filing was merely an intent to file a response, not the actual response. On June 22, 2018, we granted Appellant a thirty-day extension of time to file his response, which he filed on July 26, 2018. On August 8, 2018, counsel filed a second motion to

withdraw as counsel.[5]  On September 7, 2018, the Commonwealth filed a responsive brief to Appellant's "Response in Opposition to Appellate Counsel's Anders Brief and Motion to Withdraw as Counsel," as ordered by this Court on June 22, 2018.  The matter is now ripe for review.

The underlying facts of the crimes, as set forth in the affidavit of probable cause, are as follows:[6]

> On Friday, September 4[th], 2009, I received a complaint from Brandi Murray who resides at 113 Harrison Avenue, Norwood, Pa. 19074.  Murray states she rents a house known as 113 Harrison Avenue, in Norwood, stating she entered into a residential lease agreement with [Appellant] of D and B Property Investors Corporation in June of 2009.  The lease became effective June 1[st], 2009 and was to continue [until] May 30[th] and then become month to month from there.
>
> The lease states that Lessee agrees to pay a sum of one-thousand three hundred one dollar[s] and three cents per month by depositing the funds into TD Bank, Account #368366662 in Cash or Money order only.  Murray states that [Appellant] was given first, last and a security deposit totaling $3,900.00 and subsequently has given $2,600.00 to [Appellant] in rent.
>
> Murray came to police headquarters today because she received a notice to vacate the property, by the Sheriff's Department.  Murray stated that the Veterans' Administration actually owns the house after the prior owners Alexandrowicz defaulted on their mortgage.  Murray stated that [Appellant] in an e-mail stated "whenever you get anything legal coming in, all u have to do is fax it to me.  The Sheriff may be there to serve

---

[5]  In light of our decision herein to grant counsel's application to withdraw as counsel filed on April 18, 2018, the second application to withdraw filed on August 8, 2018, is denied as moot.

[6]  Appellant stipulated at the guilty plea hearing that the affidavit of probable cause established an adequate factual basis for the guilty plea.  N.T. (Guilty Plea), 8/10/11, at 12.

papers. I will explain the whole process to you when I get back from vacation."

I then called the Veterans' Administration Housing Division who told me that Bank of America deals with all of their foreclosures. I then contacted Bank of America Fraud Division and was told that the house was owned by the Veteran's Administration and that at no time was [Appellant] or D and B property Investors Corporation given permission to rent out the property located at 113 Harrison Avenue in Norwood, Pa. 19074. Bank of America representatives did tell me that the prior owner was given an opportunity to hand over the keys in December of 2008 for a sum of two-thousand dollars but the owner Donna Alexandrowicz declined. Bank of America stated that it was standard practice to offer homeowners money to vacate a foreclosed property so that the Sheriffs Department doesn't have to get involved.

I was then able to find the prior owner[]s of 113 Harrison Avenue, and spoke with Donna Alexandrowicz. Alexandrowicz did tell me that in April of 2009, she was offered $700 by [Appellant] of D and B Property Investors Corporation to sell him the keys to 113 Harrison Avenue, Norwood. Alexandrowicz stated to me that she accepted the offer because she was walking away from the house and wanted nothing more to do with it. Alexandrowicz stated she believed it was an accepted practice due to the initial offer she received in December of 2008. At no time did Alexandrowicz authorize [Appellant] or D and B Property Investors Corporation to use her name in a Residential Lease agreement which was signed by [Appellant], President of D and B Property Investors Corporation.

It is this officer's opinion that [Appellant] did enter into a Residential Lease Agreement on a property in which he held no legal entitlement. [Appellant] also authored and signed a rental agreement which held a prior owner's name [of] which the owner had no knowledge. [Appellant] did have deposited into his TD Bank Account #368366662 a total of six-thousand five hundred two dollars and six cents, which he had no authority to collect.

Affidavit of Probable Cause, 9/23/09, at unnumbered 1−2.

In the ***Anders*** brief, counsel describes the issues "that arguably support the appeal," as follows:

> The issues that support the within appeal, culled from the various pleadings, supporting briefs and hearings, can be divided into three categories: the first category are questions pertaining to the specific terms of the plea agreement. Appellant contends that the record does not support the conclusion that Appellant agreed to pay restitution to [K]arla Murray as a specific term of the plea agreement. He also contends that the Assistant District Attorney failed to state the terms of the agreement, that he failed to state that Appellant agreed to pay restitution to [K]arla Murray, neither Appellant nor his counsel ever stated an agreement to pay restitution; Appellant also posits that the trial court never established the terms of the plea agreement, never asked Appellant if he agreed to the terms of the plea agreement and never asked Appellant if he agreed to pay restitution to [K]arla Murray as part of the plea agreement. Appellant faults the trial court's finding that he agreed to pay restitution to [K]arla Murray as lacking support in the record. Appellant alleges a violation of Pa.R.Crim.P. . . . 590. The second category are questions pertaining to [K]arla Murray's status in [the] matter. Appellant contends that [K]arla Murray did not suffer loss of earnings and cannot be considered a victim, as that term is defined by 18 Pa.C.S.A. Section 1106. He also alleges that the trial court is powerless to order restitution to [K]arla Murray because she was not named as a victim in the Information and no adequate motion to amend to include her as a victim was made by the Commonwealth or granted by the court. He also contends that [K]arla Murray and Brandi Murray were complicit in the crimes he committed because they were on constructive notice that Appellant did not have title to the property he purported to lease to them. As "unindicted co-conspirators," [K]arla Murray and Brandi Murray cannot be victims of Appellant's crimes. Appellant also claims that even if he did agree to pay restitution to [K]arla Murray, the Commonwealth was nonetheless required to present evidence at the plea hearing that would show she is a victim. None having been offered, the court cannot order restitution to her. (3) The third category are Appellant's contentions that the sentence imposed by the court cannot run concurrently with his Federal sentence because of the "primary jurisdiction rule." Appellant contends that concurrent sentences were indeed part of the negotiated plea and because the sentences cannot run

concurrent, he has not gotten his benefit of the bargain and is therefore entitled to have restitution monies returned to him.

Appellant's Brief at 21–23.[7]

We may not review the merits of any underlying issues without first examining counsel's petition to withdraw as counsel. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Moreover, there are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal. The procedural mandates are that counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to [his client]; and 3) advise [his client] that he or she has the right to retain private counsel or raise additional arguments that the [client] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted).

In addition, our Supreme Court, in **Santiago**, stated that an **Anders** brief must:

---

[7] The statement of the issues in the **Anders** brief does not comply with Pa.R.A.P. 2116(a). **See Commonwealth v. Sanford**, 445 A.2d 149, 150 (Pa. Super. 1982) ("When issues are not properly raised and developed in briefs, and when the briefs are wholly inadequate to present **specific** issues for review, a court will not consider the merits thereof.") (citations omitted). While the statement of the issues fails to comport with our appellate rules, "in the interest of justice we address the arguments that can reasonably be discerned . . . ." **Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003).

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Appellant's counsel has complied with the first prong of *Santiago* by providing a summary of the procedural history in the *Anders* brief. He has satisfied the second prong by referring to any evidence in the record that he believes arguably supports the appeal. Counsel also set forth his conclusion that the appeal is frivolous, and he stated his reasons for that conclusion, with appropriate support. Moreover, counsel filed a separate motion to withdraw as counsel, wherein he stated that he examined the record and concluded that the appeal is wholly frivolous. Further, counsel has attempted to identify and develop any issues in support of Appellant's appeal. Additionally, counsel sent a letter to Appellant, and he attached a copy of the letter to his *Anders* Brief.[8] In the letter counsel stated that he informed Appellant that he has filed an

_____

[8] While counsel has not included an averment that the trial court did not order the filing of a Pa.R.A.P. 1925(b) statement, as required by Pa.R.A.P. 2111(d), we will not quash the *Anders* brief for this reason. The trial court opinion makes clear that the trial court did not order the filing of a Rule 1925(b) statement. Trial Court Opinion, 12/29/17, at 5 n.17.

***Anders*** brief, and he apprised Appellant of his rights in light of the motion to withdraw as counsel. Appellant has filed a response to counsel's request to withdraw.

Based on the foregoing, we conclude that the procedural and briefing requirements of ***Anders*** and ***Santiago*** for withdrawal have been met. Therefore, we now have the responsibility to make an independent judgment regarding whether the appeal is, in fact, wholly frivolous. ***Commonwealth v. Tukhi***, 149 A.3d 881, 886 (Pa. Super. 2016). First, however, we must address the basis for our jurisdiction to consider the merits of Appellant's claims. ***Commonwealth v. Gentry***, 101 A.3d 813, 816 (Pa. Super. 2014). We may raise issues concerning jurisdiction *sua sponte*. ***Commonwealth v. Andre***, 17 A.3d 951, 957–958 (Pa. Super. 2011).

The instant appeal is from the trial court's order refusing to vacate the order of restitution. In ***Gentry***, we explained as follows:

> [T]his Court has held that the restitution statute, Section 1106 of the Crimes Code, "permit[s] a defendant to seek a modification or amendment of the restitution order at any time directly from the trial court." ***Commonwealth v. Stradley***, 50 A.3d 769, 772 (Pa. Super. 2012), *citing* ***Commonwealth v. Mitsdarfer***, 837 A.2d 1203, 1205 (Pa. Super. 2003). Our case law in this Commonwealth establishes that the statute creates an independent cause of action for a defendant to seek a modification of an existing restitution order. ***Id***.; ***see also*** 18 Pa.C.S.A. § 1106(c)(3) (stating, "[**T]he court may, at any time** or upon the recommendation of the district attorney . . . **alter or amend any order of restitution** made pursuant to paragraph (2), provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order[.]") (emphases added). . . .

***Gentry***, 101 A.3d at 816 (emphases in original). We have interpreted this provision to permit a defendant to seek modification of a restitution order at any time from the trial court pursuant to 18 Pa.C.S. § 1106, and not through PCRA. ***See Commonwealth v. Mitsdarfer***, 837 A.2d 1203 (Pa. Super. 2003) (holding that proper remedy when defendant requests a reduction in the amount of restitution is through trial court pursuant to 18 Pa.C.S. § 1106, and not through PCRA); ***Stradley***, 50 A.3d at 772 (same). Thus, there is no impediment to our review on the merits.

We note our well-settled standard of review. In the context of criminal proceedings, an order of "restitution is not simply an award of damages, but, rather, a sentence." ***Commonwealth v. Atanasio***, 997 A.2d 1181, 1182–1183 (Pa. Super. 2010) (citing ***Commonwealth v. C.L.***, 963 A.2d 489, 494 (Pa. Super. 2008)). An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record "challenges the legality, rather than the discretionary aspects, of sentencing." ***Stradley***, 50 A.3d 771–772.

> "A challenge to the legality of a sentence . . . may be entertained as long as the reviewing court has jurisdiction." ***Commonwealth v. Borovichka***, 18 A.3d 1242, 1254 (Pa. Super. 2011) (citation omitted). It is also well-established that "if no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." ***Commonwealth v. Rivera***, 95 A.3d 913, 915 (Pa. Super. 2014) (citation omitted). "An illegal sentence must be vacated." ***Id***. "Issues relating to the legality of a sentence are questions of law; as a result, our standard of review over such questions is *de novo* and our scope of review is plenary." ***Commonwealth v. Akbar***, 91 A.3d 227, 238 (Pa. Super. 2014) (citations omitted).

- 15 -

***Gentry***, 101 A.3d at 816–817.

Examining the issues we can identify in the ***Anders*** brief, we agree with counsel that the appeal is frivolous. Appellant attempts to challenge the legal validity of his counseled, negotiated guilty plea, whether he received the benefit of his bargain, and whether the record supports the court's restitution order. We cite with approval the following passage in the ***Anders*** brief, which explains the frivolous nature of Appellant's allegations in his Motion to Vacate August 10, 2011 Restitution Order:

> The Assistant District Attorney stated the crimes Appellant would plead to, the grading of the offenses and the recommended sentence. He then stated that "There is restitution owed to Karla Murray . . . in the amount of $6,500.00." He advised the court ". . . that restitution was pre-paid by [Appellant] during the course of this proceeding, as been—being held in escrow by Court Financial Services". Counsel alluded to ". . . a stipulation that's signed here by [Appellant's plea counsel] and myself, and I would ask the [c]ourt to enter the stipulation as an [o]rder of the [c]ourt, releasing the $6,500.00 funds to Ms. Murray, who's present in the courtroom here. . . ." Appellant claims, on the other hand, that the Assistant District Attorney never said that restitution was part of the agreement, and that a motion was never made or granted to amend the Informations to name Karla Murray as a victim. The transcript shows, however, that counsel did in fact make such a motion and alluded to a stipulation for payment of restitution to Karla Murray. While Appellant may establish a technical violation of Rule 590, he is nonetheless not entitled to relief. In order to obtain relief from a violation of the Rules of Criminal Procedure, Appellant must show prejudice. . . .

***Anders*** Brief, 9/17/18, at 27 (*citing **Commonwealth v. Bowman**,* 840 A.2d 311 (Pa. Super. 2003). Moreover, in affirming this case, we rely on the thorough, detailed, and insightful opinion filed on December 29, 2017, by the

Honorable Kevin F. Kelly, who has presided over this case since its inception in 2011.[9]

We also have considered Appellant's "Response in Opposition to Appellate Counsel's Anders Brief and Motion to Withdraw as Counsel . . .," ("Response") filed on July 26, 2018. In his Response, Appellant asks this Court to disqualify counsel and suggests that counsel's appointment applied only to representation during the PCRA proceedings. Response, 7/26/18, at 1–2, 6, 11, and Exhibit D. Appellant also avers that counsel rendered ineffective assistance in failing to file a praecipe in the common pleas court pursuant to Pa.R.A.P. 301(d) and a notice of appeal from the judgment of sentence because counsel did not send Appellant copies of case law. *Id*. at 3–5, 9, 12.

In his August 8, 2018 Second Application to Withdraw as Counsel, counsel explains as follows:

> That Appellant has at times demanded that the undersigned . . . file with the lower court a praecipe to enter the August 10, 2011 sentencing order into the lower court docket, followed by a Notice of Appeal of that now-entered order to this Court. Appellant is of a mind that such filings will finalize the judgment of sentence so that it is now ripe for direct appeal. To the contrary, as no post sentence motions were filed, Appellant had 30 days after sentence was imposed in open court, to take a direct appeal to this Court, *Commonwealth vs. Millsock*, 873 A2d 748 (Pa. Super. 2008); *Commonwealth vs. Gaines*, 127 A3d 15 (Pa. Super. 2015); *see also*, Pa.R.A.P. Rules 108(d)(2),301(a)(1), (2) and 903. By way of letter dated and sent to Appellant on

---

[9] The parties are directed to attach a copy of the opinion in the event of future proceedings.

January 29, 2018, the undersigned advised Appellant that such filings would not revive a direct appeal of his sentence, citing the above authorities. Appellant does not accept that this Court does not now have jurisdiction to entertain a new direct appeal of a sentence announced and imposed on August 10, 2011. To that end, Appellant has insisted that the undersigned file the above mentioned praecipe and notice of appeal, under threat of referral to the Pennsylvania Supreme Court Disciplinary Board as well as a federal civil rights action for monetary damages. Appellant has made these threats by way of electronic mail and has made them public by including them in his filings with this Court, *see*, Answer, "Exhibit B[.]"

Second Application to Withdraw as Counsel, 8/8/18, at 4–5.

It is well settled that an indigent defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." ***Commonwealth v. Morrison***, 173 A.3d 286, 292 (Pa. Super. 2017) (citing ***Jones v. Barnes***, 463 U.S. 745, 751, (1983)). Further, regarding Appellant's contention that the amendment of the information to include Karla Murray as an additional person from whom Appellant had unlawfully obtained United States currency, the claim has no merit. Pa.R.Crim.P. 564 ("The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the

information as amended does not charge an additional or different offense.").[10]

Appellant also filed an application for relief on October 1, 2018, in which he asks this Court to "issue an order upon the Director of the Office of Judicial Support . . . to transmit the documents [Appellant] filed with said Director . . . to the Prothonotary of this Court . . . so this [C]ourt will have appellate jurisdiction to review . . . the decisions the trial court rendered in its August 10, 2011 order . . . ." Application for Relief, 10/1/18, at 1. We concluded *supra* that we have jurisdiction in this matter. Thus, we deny the Application as moot.

For all of these reasons, we grant counsel's petition to withdraw as counsel. Furthermore, we affirm the trial court's April 24, 2017 order denying Appellant's Motion to Vacate August 10, 2011 Restitution Order.

---

[10] Pa.R.Crim.P. 564 stated as above in 2011, the time of Appellant's guilty plea and sentencing. The rule was amended on December 21, 2016, effective December 21, 2017, to read:

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

March 6, 2018 petition to withdraw as counsel granted. April 24, 2017 order affirmed. August 8, 2018 petition to withdraw as counsel denied as moot. October 1, 2018 application for relief denied as moot.

Judge Lazarus did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/18

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :    NO. 1821-10
                                :
              v.                :
                                :
GENNARO RAUSO                   :    Superior Court No. 1792 EDA 2017

A. Sheldon Kovach, Esquire – Deputy District Attorney for the Commonwealth
William P. Wismer, Esquire – Attorney for Gennaro Rauso

OPINION

Kelly, J.                                    Date: December 29, 2017

*I. Case History*

A criminal complaint was filed on September 23, 2009, by Corporal Christopher Kennedy, Norwood Police Department, charging Gennaro Rauso (hereinafter referred to as "Rauso" and/or "Defendant") with, *inter alia*, theft by deception[1] and deceptive business practices.[2] On this same date (September 23, 2009), the magisterial district judge issued for the Defendant a bench warrant. *See* Bench Warrant, No. CR 253-09 - Magisterial District Court 32-2-42 dated September 23, 2009.

A preliminary hearing was held on March 10, 2010, before the magisterial district court and after the Commonwealth's presentation of evidence, the magisterial district judge held Defendant Rauso for trial court proceedings as to, *inter alia*, theft by deception[3] and deceptive business practices.[4]

The Defendant on April 8, 2010, was formally arraigned at which time the Office of the District Attorney of Delaware County lodged against him criminal informations averring, *inter*

*alia*, Information B – Theft by Deception[5] and Information E – Deceptive Business Practices.[6] *See* Informations.

On August 10, 2011,[7] Defendant Rauso entered a counseled, negotiated guilty plea to Information B – Theft by Deception,[8] a felony of the third degree, and Information E – Deceptive Business Practices,[9] also a third degree felony. N.T. 8/10/11, pp. 11-13. The prosecution consistent with the plea agreement's terms orally motioned, of-record, to amend its past filed criminal informations to recognize Carla Murray as an additional victimized owner of property, who incurred a financial loss, and that Information E (deceptive business practices)[10] also be amended to reflect an amount at issue over two-thousand ($2,000.00) dollars, as well as a resultant third degree felony gradation. These Commonwealth amendment applications were allowed, absent defense objection. N.T. 8/10/11, pp. 5-7. *See also* Defendant's Guilty Plea Statement, and Informations B and E. *See generally* Pa.R.Crim.P. 564.

Immediately subsequent to his entering this plea of guilty and his attorney waiving such an investigation, Defendant Rauso was sentenced wholly consistent with the lawyers' plea negotiations as follows: Information B (Theft by Deception)[11] – A term of eighteen (18) through thirty-six (36) months incarceration at a state correctional facility; and Information E (Deceptive Business Practices)[12] – A fifteen (15) through thirty-six (36) month period of imprisonment at a state correctional institution. Defendant Rauso by that which both counsel acknowledged was not entitled to any time served credit and was deemed for recidivism risk reduction incentive consideration[13] ineligible, without defense opposition. N.T. 8/10/11, pp. 8, 22. Additionally, per the plea understanding, these sentences were directed to run consecutively to each other (Informations B and E), but the entirety of the Defendant's sentence at bar was ordered to be served concurrently with his June 20, 2011, sentence past imposed by the District Court of the

2

Eastern District of Pennsylvania under docket, *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001, an aggregate period of incarceration of one hundred sixty (160) months followed by three (3) years supervised release. *See* Certificate of Imposition of Judgment of Sentence. N.T. 8/10/11, pp. 20-22. *See also United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.

No timely or post-sentence motions otherwise were lodged, including any pleading advancing a challenge to the sentence's legality and/or a request to withdraw Defendant Rauso's previously entered negotiated guilty plea. No direct appeal to the Superior Court of Pennsylvania was filed.

In the course of his ongoing collateral litigation before this court,[14] the Defendant on June 9, 2016, lodged a Motion to Vacate August 10, 2011 Restitution Order ... , as well as a Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... . *See* Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016. *See also* Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016.

The court on February 10, 2017, entered a hearing notice for February 24, 2017, relevant to, *inter alia*, the Defendant's Motion to Vacate August 10, 2011 Restitution Order ... . *See* Hearing Notice dated February 10, 2017. *See also* Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016.

Defendant Rauso on February 22, 2017, filed a Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order. *See* Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017.

3

As past listed, a hearing regarding, *inter alia*, the Defendant's motion to vacate the restitution order commenced and concluded on February 24, 2017, before this court. N.T. 2/24/17.

By an order dated February 27, 2017, the court denied the Defendant's Motion to Vacate August 10, 2011 Restitution Order ... . *See* Order dated February 27, 2017. *See also* Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016.

On March 22, 2017, Defendant Rauso filed a Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*]. *See* Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017.

In an effort to timely resolve this then most recent lodging (March 22, 2017) and recognizing the same was a defense filing, as well as the logistical challenges of scheduling at bar electronic proceedings,[15] the court set this reconsideration motion to also be addressed at a hearing already in place for March 30, 2017. *See* Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017. *See also* Hearing Notice dated March 24, 2017.

As the order denying the challenge to his restitution payment obligation the Defendant sought to have revisited was entered on February 27, 2017, this court only retained its jurisdiction requisite to reconsider this motion pursuant to 42 Pa.C.S. §5505 (Modification of Orders) through March 29, 2017. This court to preserve the jurisdictional authority necessary to that which it believed stemming from the then listed reconsideration hearing to be a next proper course of action was thus constrained to vacate the original order of denial (February 27, 2017),

4

address any such concerns at the upcoming hearing (March 30, 2017), and again review its February 27, 2017, order in light of the same following of this scheduling's (March 30, 2017) conclusion. *See* Order dated March 24, 2017. *See also* Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017.

A hearing regarding, *inter alia*, the Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] as then set began and ended on March 30, 2017, before this court. N.T. 3/30/17.

Resulting from the March 30, 2017, listing, the court through an order of April 24, 2017, reinstated its February 27, 2017, order denying the Defendant's Motion to Vacate August 10, 2011 Restitution Order ... . *See* Orders dated February 27, 2017, and April 24, 2017. *See also* Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017; Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, Defendant's Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016; Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017; N.T. 2/24/17; and N.T. 3/30/17.

The then self-represented Defendant lodged on May 4, 2017, a notice of appeal[16] from this court denying the motion to vacate his restitution sentencing payment obligation, as well as his vacating of restitution reconsideration's subsequent denial.[17] *See* Notice of Appeal dated May 4, 2017, and Superior Court No. 1792 EDA 2017. *See also* Orders dated February 27, 2017, and April 24, 2017; Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March

5

22, 2017; Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, Defendant's Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016; and Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017.

## *II. Discussion*

Through Defendant Rauso's numerous pleadings seeking that his restitution payment obligation be vacated and the reconsideration lodging of the court denying the same, he maintained that both his restitution sentencing condition stemming from such an expressly agreed on term of his negotiated guilty plea should be set aside, as well that he is entitled to the return of the restitution amount he past and fully paid, prior to pleading guilty. In support of this challenge, *inter alia*, the Defendant advanced various claims, including a contention he was unaware and/or did not agree as part of the plea bargain to a restitution payment obligation, as well as that although this restitution sentencing responsibility resulted from a counseled negotiated plea of guilty, the failure of the prosecution to present evidence and/or witness testimony salient to the financial loss the victim suffered rendered this restitution sentencing condition legally infirm. The Defendant also baldly maintained in the alternative that despite this court accepting such a term of the plea agreement and the sentencing certificate unquestionably directing the sentence at bar was to be served concurrently to his then ongoing federal court sentence,[18] he as a matter of law could not be afforded that benefit of the plea bargain because the certificate of imposition of judgment of sentence did not further specify certain language from the Pennsylvania judicial code's section 9761(b), 42 Pa.C.S. §9761(b). *See* Orders dated February 27, 2017, and April 24, 2017. *See also* Defendant's Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016; Brief in Support of Motion to Vacate

6

August 10, 2011 Restitution Order ... dated June 9, 2016, pp. 17-24; Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017, pp. 6-9; and Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017. These arguments of Defendant Rauso on the instant record are meritless.

*Jurisdiction to Adjudicate*

Salient to current considerations, section 1106 of the Pennsylvania crimes code provides that below:

> (a) **General Rule.** – Upon conviction for any crime wherein property has been stolen, ... or otherwise unlawfully obtained, ... as a direct result of the crime, ... the offender **SHALL** be sentenced to make restitution in addition to the punishment prescribed therefor. ...
>
> (c) **Mandatory restitution.** –
>
> > (1) The court **SHALL ORDER FULL RESTITUTION:**
> >
> > > (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. ...
> >
> > (2) At the time of sentencing the court shall specify the amount and method of the restitution. In determining the amount and method of restitution, the court:
> >
> > > (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney ... and such other matters as it deems appropriate. ...
> >
> > (3) *The court may, at any time* or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, *alter or amend any order of restitution* ... , provided, however, that the

7

court states its reasons and conclusions as a matter of
record for any change or amendment to any previous order.

18 Pa.C.S. §1106(a)(c)(1)(i)(2)(i)(3). (Emphasis in original and added).

Although the Defendant's various challenges targeting his sentencing restitution payment

responsibility were launched well after his sentencing judgment became final, this court flowing

from certain of the material statutory language cited above as seen by the appellate courts yet

retained necessary jurisdictional authority to adjudicate his restitution challenge. *See* Certificate

of Imposition of Judgment of Sentence and Defendant's Motion to Vacate August 10, 2011

Restitution Order ... dated June 9, 2016. Specifically, the Pennsylvania Superior Court has held

that below:

> *This provision [18 Pa.C.S. §1106(c)(3)] has been interpreted by
> our Court to permit a defendant to seek a modification or
> amendment of a restitution order at any time directly from the
> trial court. See Commonwealth v. Mitsdarfer*, 837 A.2d 1203
> (Pa.Super. 2003)(*holding that proper remedy for defendant
> requesting a reduction in the amount of restitution*, entered
> following no contest plea to unauthorized use of an automobile,
> *eleven months after judgment of sentence was entered, was
> through trial court*, pursuant to 18 Pa.C.S. § 1106, *and not PCRA*;
> since statute afforded trial court authority to amend or alter
> restitution order at any time, defendant was not time-barred from
> filing an appropriate motion with the trial court).

*Commonwealth v. Stradley*, 50 A.3d 769, 772 (Pa.Super. 2012). (Emphasis added). *See also
Commonwealth v. Holms*, 155 A.3d 69, 77 (Pa.Super. 2017) *citing Commonwealth v. Stradley
supra* 50 A.3d at 772 (" ... [A] motion requesting modification of restitution is not considered a
typical post-sentence motion subject to timeliness constraints.") and *Commonwealth v. Gentry*,
101 A.3d 813, 816 (Pa.Super. 2014) *quoting Commonwealth v. Stradley supra* 50 A.3d at 772.

Recognizing the clearly stated directions of the above cited appellate court opinions, this

court enjoyed the requisite jurisdiction relevant to the Defendant's numerous attacks on his past

imposed restitution payment sentencing term. *See* Orders dated February 27, 2017, and April 24,

2017. *See also* Defendant's Motion to Vacate August 10, 2011 Restitution Order ... dated June

8

9, 2016; Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, pp. 17-24; Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017, pp. 6-9; and Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017. *See also Commonwealth v. Stradley supra* 50 A.3d at 772.

## *Validity of Counseled, Negotiated Plea of Guilty*

A core underpinning of the Defendant's varied contentions that his sentencing condition of restitution was unlawful, as well as his then ongoing collateral litigation, were challenges to the legal validity of his counseled, negotiated guilty plea. *See* Motion to Vacate Restitution, pp. 6, 12-13; Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, pp. 8-13; and Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017, pp. 4-7, 9-10. *See also* Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated March 8, 2017; Motion for Leave to File Motion to Withdraw Guilty Plea and or for Modification of Sentence Nunc Pro Tunc [*sic*] dated March 8, 2017; Brief in Support of Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated May 30, 2017; Second Motion for Leave to Amend Petition for Post Conviction Collateral Relief dated May 30, 2017; Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017; Defendant's *Pro Se* Motion to Correct the Judgment of Conviction ... dated January 21, 2016; Brief in Support of Motion to Correct Judgment ... dated January 21, 2016; Reply to the Commonwealth's Answer ... dated April 20, 2016; Motion to Rescind, Modify And Or Reconsider This Court's February 27, 2017 Order Denying

Defendant's Application for the Amendment of the Certificate of Imposition of Judgment of Sentence [*sic*] dated March 22, 2017; and Defendant's *Pro Se* Second Motion for an Extension of Time by Which to File a Brief in Support of His Motion to Withdraw Guilty Plea and or for Modification of Sentence; Alternatively to File Said Motion Nunc Pro Tunc [*sic*] dated April 27, 2017. Despite Defendant Rauso's assertions otherwise, a review of the record at bar demonstrates that his counseled, negotiated plea of guilty was certainly in all material respects lawful.

In general, a guilty plea is a waiver of treasured rights, and to be valid the plea must be knowing, intelligent and voluntary. *Commonwealth v. Sauter*, 389 Pa.Super. 484, 487-88, 567 A.2d 707, 708-09 (1989) and Pa.R.Crim.P. 590. "A guilty plea colloquy must include inquiry as to whether: (1) the defendant understood the nature of the charge to which he is pleading guilty; (2) there is a factual basis for the plea; (3) the defendant understands that he has the right to a jury trial; (4) the defendant understands that he is presumed innocent until he is found guilty; (5) the defendant is aware as to the permissible range of sentences; and (6) the defendant is aware that the judge is not bound by the terms of any plea agreement unless he accepts such agreements." *Commonwealth v. Flood*, 426 Pa.Super. 555, 565, 627 A.2d 1193, 1198 (1993) *quoting Commonwealth v. Willis*, 471 Pa. 50, 51-52, 369 A.2d 1189, 1189-90 (1977). *See also Commonwealth v. Morrison*, 878 A.2d 102, 107 (Pa.Super. 2005) *citing Commonwealth v. Flanagan*, 578 Pa. 587, 608-09, 854 A.2d 489, 502 (2004); and *Commonwealth v. Reid*, 117 A.3d 777, 782-83 (Pa.Super. 2015). Inquiry about these six (6) areas is in every guilty plea colloquy mandatory. *Commonwealth v. Morrison supra* 878 A.2d at 111; *Commonwealth v. Moser*, 921 A.2d 526, 529 (Pa.Super. 2007); *Commonwealth v. Mendoza*, 730 A.2d 503, 506 (Pa.Super. 1999) *citing Commonwealth v. Persinger*, 532 Pa. 317, 321-22, 615 A.2d 1305, 1307

10

(1992) and *Commonwealth v. McClendon*, 403 Pa.Super. 467, 469-70, 589 A.2d 706, 707-08 (1991). *See also* Comment to Pa.R.Crim.P. 590.

The critical purpose of the guilty plea colloquy is to provide memorialized evidence that the plea was a voluntary and intelligent action undertaken with a full awareness of its ramifications. *Commonwealth v. Iseley*, 419 Pa.Super. 364, 377, 615 A.2d 408, 415 (1992) *citing Commonwealth v. Ingram*, 455 Pa. 198, 200, 316 A.2d 77, 78 (1974); *Commonwealth v. Rush*, 909 A.2d 805, 808 (Pa.Super. 2006) *Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa.Super. 2001); *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa.Super. 2011) *quoting Commonwealth v. Fluharty*, 429 Pa.Super. 213, 219, 632 A.2d 312, 314-15 (1993).

The guilty plea colloquy must affirmatively demonstrate that the defendant understood what the plea connoted and its consequences. *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa.Super. 2008) *citing Commonwealth v. Lewis*, 708 A.2d 497, 501 (Pa.Super. 1998). *See also Commonwealth v. Hart*, 2017 WL 5246752, p. 7 (Pa.Super. 2017) *quoting Commonwealth v. Yeomans supra* 24 A.3d at 1047; *Commonwealth v. Willis*, 68 A.3d 997, 1002 (Pa.Super. 2013) *quoting Commonwealth v. Lewis supra* 708 A.2d at 501; and *Commonwealth v. Miller*, 432 Pa.Super. 619, 629, 639 A.2d 815, 820 (1994). The court may direct this plea examination, or it may permit defense counsel or the attorney for the Commonwealth to conduct such an of-record colloquy. *Commonwealth v. McCauley supra* 797 A.2d at 922.

While the rule 590[19] inquiries are necessary to the lawfulness of any plea of guilty, in discerning a defendant's actual knowledge of the implications and rights associated with a guilty plea and its legal validity, a court is free to examine the totality of the material circumstances surrounding the plea. *Commonwealth v. Fears*, 575 Pa. 281, 302, 836 A.2d 52, 64 (2003) *citing Commonwealth v. Allen*, 557 Pa. 135, 145, 732 A.2d 582, 588-89 (1999). *See also*

11

*Commonwealth v. Kelly*, 136 A.3d 1007, 1013 (Pa.Super. 2016) *citing Commonwealth v. Muhammad*, 794 A.2d 378, 383-84 (Pa.Super. 2002); *Commonwealth v. Broaden*, 980 A.2d 124, 129 (Pa.Super. 2009) *citing Commonwealth v. Flanagan supra* 578 Pa. at 605-06, 854 A.2d at 500; and *Commonwealth v. Bedell supra* 954 A.2d at 1213 *citing Commonwealth v. Fletcher*, 604 Pa. 493, 515, 986 A.2d 759, 772 (2009); *Commonwealth v. Natividad*, 595 Pa. 188, 207, 938 A.2d 310, 321 (2007). Under this standard, the trial court may properly consider a wide array of relevant evidence, including but not limited to written plea agreements. *Commonwealth v. Allen supra* 557 Pa. at 146-47, 732 A.2d at 589. Hence, the needed inquiries do not have to be solely oral, but may be supplemented by a written colloquy that the defendant reads, completes and signs, which is also incorporated as part of the case record, in addition to some of-record, verbal examination. *Commonwealth v. McCauley supra* 797 A.2d at 922 and *Commonwealth v. Morrison supra* 878 A.2d at 108.

When deciding a collateral attack targeting a guilty plea's lawfulness and/or relatedly plea counsel's alleged professional incompetence regarding the same grounded on a claim a defendant did not receive "the benefit of the bargain," *inter alia*, courts " ... focus on whether a guilty plea was entered premised on an expectation that was legally impossible to fulfill." *Commonwealth v. Kersteter*, 877 A.2d 466, 470 (Pa.Super. 2005). " 'Assuming the plea agreement is legally possible to fulfill, ... and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement.' " *Commonwealth v. Anderson*, 955 A.2d 1184, 1191 (Pa.Super. 2010) *quoting Commonwealth v. Parsons*, 969 A.2d 1259, 1267-68 (Pa.Super. 2009) *citing Commonwealth v. Coles*, 365 Pa.Super. 562, 571, 530 A.2d 453, 458 (1981) and *Commonwealth v. Reichle*, 441 Pa.Super. 1, 4, 589 A.2d 1140, 1141 (1991).

Defendant Rauso's written guilty plea statement is four (4) pages in length and consists of twenty-seven (27) individually numbered paragraphs descriptively and comprehensively detailing the following: Ability to Understand; Contact with Lawyer; Right to Trial; Trial Rights; Trial by Jury; Trial by Judge; Motions Before Trial; Effect of Plea; Admission of Guilt ... and Penalties; Plea Agreement; Loss of Rights; and Voluntary Plea. *See* Defendant's Guilty Plea Statement. The Defendant's duly executed guilty plea statement salient to current considerations provides that below:

> If you choose to plead guilty ... , this Guilty Plea Statement should be completed by you. ... You should read this statement carefully and review it with your lawyer. It is *IMPORTANT* that you understand, agree with and answer truthfully everything contained in this Guilty Plea Statement. If you understand and agree with what is said in a paragraph of this statement, place your initials on the line provided. *If you do not understand and agree with what is said in a paragraph, DO NOT place your initials on the line provided, and you should tell the judge what you do not agree with or understand.* ...
>
> ... *I can read, write, speak and understand the English Language.* ...
>
> *I do not have any physical, emotional or mental problems which affect my ability to understand what I am doing today, the rights which I have and the rights which I am giving up by pleading guilty ... and I am not now under the influence of any narcotics, drugs, alcohol or any other substance.*
>
> I have fully discussed this case with my lawyer including the facts and possible defenses I may have to these charges such as but not limited to: I didn't commit the crimes charged, mistaken identity, alibi ... insanity ... , justification ... , and any lawful excuse for my acts. I understand and my lawyer has explained to me all of the possible defenses I may have to these charges. I am satisfied that my lawyer knows of all the facts and law concerning this case.
>
> I am fully satisfied with what my lawyer has done for me in the past and what my lawyer is doing for me today concerning this case. ...

13

I understand and my lawyer has explained to me that if I plead not guilty, I have a right to have a trial before a judge and a jury or I may ask that my trial be before a judge alone without a jury.

I understand and my lawyer has explained to me that if I plead not guilty and have a trial:

I am presumed to be innocent of these crimes and the Commonwealth has the burden of proving that I committed each of the elements of the crimes charged beyond a reasonable doubt. ...

My plea of guilty ... will have the same effect in criminal law as if I had a trial and was convicted of the crimes to which I have pled guilty .... ...

*I understand and agree that I am pleading guilty ... to the crimes listed below.*

I understand and my lawyer has explained to me the elements of these crimes and the possible penalties for them. By pleading guilty, I agree and admit that I committed each element of these crimes ... . *I agree that the Commonwealth can prove that I committed each element of these crimes beyond a reasonable doubt.* I am pleading guilty ... to the following crimes:
A) Theft by Deception a ... felony of the 3rd degree ... .

B) Deceptive Business Practice a ... felony of the 3rd degree and the maximum penalty for this crime is 7 years in jail and a $15,000 fine.

I understand and my lawyer has explained to me that:
I could be sentenced to the maximum penalty for each of these crimes and the total maximum sentence I could receive is 14 [years] in jail and a $30,000 fine. ...

I understand and my lawyer has explained to me that the judge is not bound to follow the terms of any plea agreement that I have with the Commonwealth ... but if the judge decides not to accept the plea agreement, I will be allowed to withdraw or take back my pleas of guilty and the judge has not taken part in any plea discussions or plea agreements.

I understand and my lawyer has fully explained to me all of the facts and rights which I have that are contained in this guilty plea statement and that by pleading guilty ... , I give up or lose all of these rights.

14

*I have not been pressured, forced or threatened in any way by anyone to plead guilty ... to these charges, and I have not been promised anything by anyone in return for pleading guilty ... other than the plea agreement, if any, which has been presented to the judge.*

*I have had enough time to fully discuss my case and my decision to plead guilty ... and everything contained in this Guilty Plea Statement with my lawyer and, by placing my initials on all of the lines provided, I am saying that I understand, agree with, and answered truthfully everything contained in this Guilty Plea Statement.*

*See* Defendant's Guilty Plea Statement – Instructions and Paragraph Nos. 1, 2, 3, 4, 6, 7, 19, 21, 22, 24, 25, 26, 27. (Emphasis added.) N.T. 8/10/11.

After his being sworn, *inter alia*, this court colloquied Defendant Rauso as to his understanding of the negotiated guilty plea and his execution of the guilty plea statement:

The Court:

> Mr. Rauso, you have had the opportunity to review fully with Mr. Bros [*sic*] a Guilty Plea Statement[?]

Defendant Rauso:

> Yes, Your Honor.

The Court:

> You have signed and initialed that document where required[?]

Defendant Rauso:

> Yes.

The Court:

> *Would you like any more time to further talk privately with Mr. Bros [sic] about any of the rights related to Information [sic][20] that Guilty Plea Statement discusses?*

15

Defendant Rauso:

> *No.*

The Court:

> ***Do you have any questions about those rights and that information you'd care to ask me?***

Defendant Rauso:

> *No.*

The Court:

> It's your belief then you understand those rights and that information.

Defendant Rauso:

> Yes. ...

The Court:

> ***... Mr. Rauso, would you like any more time to further talk privately with Mr. Bros [sic] about your decision to enter this Guilty Plea?***

Defendant Rauso:

> *No.*

The Court:

> You're satisfied with Mr. Bros [sic] being your attorney in this case?

Defendant Rauso:

> Yes.

The Court:

> You would like me then to accept your plea of guilty as well as the sentencing recommendation the attorney's [sic] have reached?

16

Defendant Rauso:

> I'm sorry. I didn't hear that.

The Court:

> ***You would like me to accept your Guilty Plea, and follow the sentencing recommendations the attorneys have agreed on?***

Defendant Rauso:

> ***Yes.***

N.T. 8/10/11, pp. 9-10, 12-13. (Emphasis added.)

Although standing immediately to the left of his lawyer at the bar of the court and literally within three (3) feet of the assistant district attorney when counsel recounted and confirmed the crimes to which he was pleading, the guilty plea being negotiated, and the plea agreement's terms, including but not limited to his then already paid restitution sentencing obligation, Defendant Rauso did not in any manner dispute the same, despite the court affording the Defendant the opportunity to once more consult privately with his attorney about his plea decision and/or inquiring directly of him whether he had any questions and/or concerns he then needed to bring to the court's attention. N.T. 8/10/11, pp. 3-8, 9-13. Furthermore, in response to the court's direct query whether he wanted it to accept his guilty plea and its recommended sentence, Defendant Rauso unequivocally replied, "Yes." N.T. 8/10/11, pp. 12-13.

The Defendant in further memorialization of his pleading guilty to Information B – Theft by Deception[21] signed this information (B) acknowledging he " … unlawfully and intentionally obtain[ed] or with[held] property of another, to wit: U.S. Currency [*sic*], valued at $6,502.06 … ." *See* Information B. *See also* N.T. 8/10/11, pp. 10-11. Likewise, Defendant Rauso also executed relevant to Information E – Deceptive Business Practices[22] the information

17

(E) recognizing he " ... in the course of business ... [made] a false or misleading written statement for the purpose of obtaining property or credit; ... ." *See* Information E. *See also* N.T. 8/10/11, pp. 11-12.

Material to the verbal affirmations Defendant Rauso offered while under oath during his plea of guilty colloquy, the Superior Court has recognized as follows:

> ***Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden proving otherwise. ....***
>
> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradicts the statements he made at his plea colloquy. ...
>
> ***[A] defendant who elects to plead guilty has a duty to answer questions truthfully. We [cannot] permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.***

*Commonwealth v. Pollard*, 832 A.2d 517, 523-24 (Pa.Super. 2003) *citing Commonwealth v. Stork*, 737 A.2d 789, 790 (Pa.Super. 1999)(Emphasis added) and *Commonwealth v. Cappelli*, 340 Pa.Super. 9, 20-21, 489 A.2d 813, 819 (1985) *quoting Commonwealth v. Brown*, 242 Pa.Super. 240, 247, 363 A.2d 1249, 1253 (1976).

On this record at bar, the Defendant's assertions that his plea of guilty was in some manner unlawful is wholly meritless. *Commonwealth v. Mendoza supra* 730 A.2d at 505 *citing Commonwealth v. Young supra* 695 A.2d at 416. *See also Commonwealth v. Pollard supra* 832 A.2d at 523-24 *citing Commonwealth v. Stork supra* 737 A.2d at 790 and *Commonwealth v. Cappelli supra* 340 Pa.Super. at 20-21, 489 A.2d at 819 *quoting Commonwealth v. Brown supra* 242 Pa.Super. at 247, 363 A.2d at 1253 ("Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden proving otherwise.").

18

## *Defendant Rauso Received the Benefit of his Bargain*

Defendant Rauso repeatedly contended by not only his vacating of restitution pleadings and related reconsideration motion, but also per his Post Conviction Relief Act litigation before this court, that because the terms of his counseled, negotiated plea of guilty could not as a matter of law enforced he did not receive "the benefit of his bargain" and he was thus entitled to the return his pre-paid restitution's return. *See* Motion to Vacate Restitution, pp. 8-13; Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, pp. 22-24; Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017, pp. 2-9; and Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017, pp. 4-7, 9-10.

The Defendant in support of his intertwined contentions that the sentence at bar being served concurrent to that past imposed by the federal court[23] was a critical term to his plea agreement and as the same could not supposedly be legally recognized proffered many arguments, particularly often repeated claims focused on the sentencing certificate not listing certain language grounded in the Pennsylvania judicial code's section 9761, 42 Pa.C.S. §9761. *See* Motion to Vacate Restitution, pp. 8-13; Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, pp. 22-24; Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017, pp. 2-9; and Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017, pp. 4-7, 9-10. The Defendant at the original hearing on his motion seeking to set aside his sentencing restitution payment responsibility (February 24, 2017), as well as during the listing of

19

his application that the court revisit its denial of the same (March 30, 2017), just largely reiterated these contentions and neither presented any witness testimony nor persuasively dispositive evidence otherwise (*E.g.* Documentation from the Pennsylvania Department of Corrections and/or Federal Bureau of Prisons refuting the sentencing certificate's clear direction this court's sentence was to be served concurrent with that of the federal courts.).[24] N.T. 2/24/17 and N.T. 3/30/17.

The prosecution did not dispute that it was an express and material condition of Defendant Rauso's negotiated guilty plea that the at bar sentence be served concurrent to that imposed previous by the federal courts, while maintaining he had been afforded this obvious plea bargain benefit. *See* N.T. 8/10/11; N.T. 2/24/17; N.T. 3/30/17; Certificate of Judgment of Imposition of Sentence; and *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania. Moreover, this court from a review of the guilty plea – sentencing hearing readily agreed from the defense perspective the concurrency of its and the federal court's sentences was an integral term of the plea agreement and Defendant Rauso likewise from the Commonwealth's viewpoint prepaying prior to his negotiated guilty plea and resultant sentencing imposition six thousand five hundred ($6,500.00) dollars victim restitution was an equally essential condition of the plea bargain. N.T. 8/11/10, pp. 3-6, 14-20, 21-22. *See also* Criminal Complaint and Probable Cause Affidavit; Information B; Certificate of Imposition of Judgment of Sentence; and Order dated August 10, 2011.

Despite the number of such pleadings attendant to his attacking the sentencing restitution payment condition and two (2) resultant hearings (February 27, 2017, and March 30, 2017), the sum of the Defendant's challenge to his sentence's restitution term rested on nothing more than dubious, extrapolated legal arguments cobbled together from a superfluity of federal and

Pennsylvania appellate court opinions having very little, if any, direct application to whether his sentence at bar was in fact running concurrent to his federal court sentence[25] and the underlining claim he had been thus deprived of his plea agreement's bargain. *See* Motion to Vacate Restitution, pp. 8-13; Brief in Support of Motion to Vacate August 10, 2011 Restitution Order … dated June 9, 2016, pp. 22-24; Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order … dated February 22, 2017, pp. 2-9; and Motion to Vacate, Rescind … This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order … [*sic*] dated March 22, 2017, pp. 4-7, 9-10. This court accordingly and rightly in denying Defendant Rauso's application that his restitution sentencing obligation be set aside concluded as follows:

> In light of the foregoing, Defendant Rauso has not sufficiently demonstrated he has been deprived of the plea negotiation's material term that his sentence at bar be served concurrent to that imposed by the federal courts so as to warrant the setting aside of his agreed upon restitution payment responsibility. N.T. 8/10/11, pp. 3-6, 8, 12, 21-22. This court as described above had the lawful authority to impose its sentence concurrent to that of the existing federal court sentence. 42 Pa.C.S. §9761(b). *See United States v. Rauso*, No. DPAE 2: 10 CRE 00406-001 – United States District Court-Eastern District of Pennsylvania.
>
> Wholly consistent with the plea agreement, this court when imposing its sentence stated and relatedly directed by the sentencing certificate that the sentence at bar was to be served concurrently to the Defendant's ongoing federal court sentence. N.T. 8/10/11, pp. 21-22. *See also* Certificate of Imposition of Judgment of Sentence. Given the eighty-eight (88) month disparity between this court's maximum sentence and the Defendant's federal court imprisonment term, well prior to his release from federal custody, Defendant Rauso ' … shall be deemed to have served his sentence.' 42 Pa.C.S §9761(b). *See also* Certificate of Imposition of Judgment of Sentence, and *United States v. Rauso*, No. DPAE 2: 10 CRE 00406-001 – United States District Court-Eastern District of Pennsylvania.

*See* Order dated February 27, 2017, p. 7.

21

Moreover, this recurrent contention by Defendant Rauso that he could not as a matter of law receive this obviously core "benefit of his plea bargain" (*I.e.* Sentence at bar concurrent to that of the federal court[26]) was just flatly refuted when the Commonwealth in response to the very same claim advanced via a collateral effort to withdrawal the Defendant's guilty plea presented the uncontradicted testimony of Pennsylvania Department of Corrections and Federal Bureaus of Prisons officials which unquestionably established the sentence of this court was in fact recognized by each respective penal agency to be concurrent to Defendant Rauso's federal court sentence.[27] N.T. 8/8/17, pp. 8-9. *See generally* N.T. 8/8/17. *See also* Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated March 8, 2017; Motion for Leave to File Motion to Withdraw Guilty Plea and or for Modification of Sentence Nunc Pro Tunc [*sic*] dated March 8, 2017; Brief in Support of Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated May 30, 2017; Second Motion for Leave to Amend Petition for Post Conviction Collateral Relief dated May 30, 2017; Defendant's *Pro Se* Brief in Support of Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated May 30, 2017; Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017; Motion to Rescind, Modify And Or Reconsider This Court's February 27, 2017 Order Denying Defendant's Application for the Amendment of the Certificate of Imposition of Judgment of Sentence [*sic*] dated March 22, 2017; Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017; and Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017.

Similar to the initial restitution challenge and reconsideration proceedings stemming from such self-represented filings of Defendant Rauso, at the hearing on August 8, 2017, the defense

22

in support of its Amended, Counseled Petition for Post Conviction Relief maintaining the Defendant could not legally receive the concurrent sentence benefit of his bargain neither presented any witness testimony nor offered any other evidence material to the same, but simply relied on the existing, salient case record, including but not limited to the sentencing certificate, and related argument. N.T. 8/8/17, pp. 8-11. *See also* Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017; Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016; Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017; N.T. 2/24/17; and N.T. 3/30/17.

The Commonwealth in opposing Defendant Rauso's sought after Post Conviction Relief Act remedy presented two (2) witnesses' testimony, Jamie Mayorga and Denise Wood.[28] N.T. 8/8/17, pp. 15-22, 23-40.

Jamie Mayorga had been employed for seven (7) years by the Federal Bureau of Prisons. N.T. 8/8/17, p. 15. Over the past three (3) years, Ms. Mayorga has been so employed as a Classification and Sentencing Computation Specialist. N.T. 8/8/17, p. 15. Her current duties included calculating sentences for federal inmates throughout the United States. N.T. 8/8/17, pp. 15-16.

Ms. Mayorga confirmed, *inter alia*, Defendant Rauso is serving a one hundred (160) month incarceration term imposed on June 20, 2011, by the federal courts. N.T. 8/8/17, pp. 18. *See United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 - United States District Court-Eastern District of Pennsylvania. (Ms. Mayorga's material records review and related sentencing computations were guided by the Defendant having a unique federal registration or inmate number, 481929066.) Ms. Mayorga as part of her considerations was aware that this court's

23

sentence in the above-captioned matter was directed to be served concurrent to Defendant Rauso's federal court sentence previously imposed. N.T. 8/8/17, pp. 18-19. *See also* Commonwealth Exhibit CP-1 – Certificate of Imposition of Judgment of Sentence dated August 10, 2011, and *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 - United States District Court-Eastern District of Pennsylvania.

Directly contrary to such concerns the defense otherwise simply argued, Ms. Mayorga referencing the "primary jurisdiction rule" (*I.e.* Defendant first sentenced and resultantly committed to federal custody) unequivocally testified that the Federal Bureau of Prisons authorities had no opposition and/or objection to the Defendant's sentence at bar being recognized as served concurrently to that imposed by the federal courts. N.T. 8/8/17, pp. 19-20. *See also* Commonwealth Exhibit CP-1 – Certificate of Imposition of Judgment of Sentence dated August 10, 2011, and *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 - United States District Court-Eastern District of Pennsylvania. Ms. Mayorga relatedly offered that this court's sentence being accepted as concurrent to that the federal courts directed had no adverse and/or impact otherwise on Defendant Rauso's federal sentence. N.T. 8/8/17, p. 20. *See also* Commonwealth Exhibit CP-1 – Certificate of Imposition of Judgment of Sentence dated August 10, 2011, and *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 - United States District Court-Eastern District of Pennsylvania.

Denise Wood for the past twenty-four and one half (24.5) years has been employed by the Pennsylvania Department of Corrections, the entirety of her tenure being devoted to the department's inmate record keeping and/or sentencing calculations. N.T. 8/8/17, pp. 23-24. Throughout the past approximate seven (7) years, Ms. Wood for the entirety of the department of corrections has been the Records Administrator. N.T. 8/8/17, p. 23. In this capacity, *inter alia*,

24

Ms. Wood is responsible for overseeing statewide the accuracy of the corrections department inmate sentencing computations. N.T. 8/8/17, p. 24.

Ms. Wood related that she was aware of both the sentence this court imposed and that Defendant Rauso was also serving an unrelated sentence directed by the federal courts. N.T. 8/8/17, pp. 24-27. *See also* Commonwealth Exhibit CP-1 – Certificate of Imposition of Judgment of Sentence dated August 10, 2011, and *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 - United States District Court-Eastern District of Pennsylvania. Based on such knowledge and her related professional experiences and/or expertise, Ms. Wood completed a Pennsylvania Department of Corrections Sentence Status Summary or DC16E form. N.T. 8/8/17, pp. 28-30. *See also* Commonwealth Exhibit CP-2 - DC16E Form. (The Defendant to assure the accuracy and continuity of the department's sentencing calculation records was assigned by Ms. Wood a unique, Pennsylvania inmate number, NA-8207. *See* Commonwealth Exhibit CP-2 - DC16E Form.) This DC16E document memorializes for department of corrections' purposes a defendant's sentencing calculations, including but not limited to an effective date, a minimum or parole eligible date, and/or a maximum or sentencing expiration date. N.T. 8/8/17, pp. 27-30. *See also* Commonwealth Exhibit CP-2 - DC16E Form.

Per Ms. Wood's sentencing determinations salient to Defendant Rauso, she testified the sentence at bar became effective August 10, 2011, the minimum or parole eligible date was May 10, 2014, and that the maximum expiration date of this court's sentence was August 10, 2017. N.T. 8/8/17, pp. 30-31. *See also* Commonwealth Exhibit CP-2 - DC16E Form, p. 1.

Having concluded the Defendant's sentence in the above-captioned matter had a maximum or expiration date of August 10, 2017, and that the Defendant's federal sentence incarceration will not be satisfied until an approximate eighty-eight (88) months subsequent, Ms.

25

Wood unequivocally testified that on the Defendant's release from the Federal Bureau of Prisons' confinement he will not for any purposes be remanded to the Pennsylvania Department of Corrections' custody. N.T. 8/8/17, pp. 31-34, 38-39. *See also* Commonwealth Exhibit CP-2 - DC16E Form. Ms. Wood also offered that it was her intention via such a correspondence dated August 11, 2017 (the first day after Defendant Rauso's sentence at bar expired), to notify Federal Bureau of Prisons and/or FCI Schuylkill officials of the department's determination that the Defendant's sentence in the above-captioned matter has been fully served. N.T. 8/8/17, pp. 38-39.

The combined testimony of the Federal Bureau of Prisons' Classification and Computation Specialist, Jamie Mayorga, and the Pennsylvania Department of Corrections' Records Administrator, Denise Wood, at the hearing on August 8, 2017, readily proved that the Defendant's at bar sentence per the plea agreement was recognized by both federal and state penal authorities as being served concurrent to his unrelated sentence under the docket, *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania, despite any extrapolated and surmised defense arguments that the same is a legal impossibility because the above-captioned matter's sentencing certificate does not note credit for time served while in prison at a penal facility designated by the Federal Bureau of Prisons, the Defendant following his at bar sentencing imposition was returned to the Federal Bureau of Prisons' custody versus his commitment to the Pennsylvania Department of Corrections, and/or some incantation-like recitation of the Pennsylvania judicial code's section 9761, 42 Pa.C.S. §9761, not being on the certificate of imposition of judgment of sentence so detailed. *See* Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017, pp. 4-5, 6-9, 10-11; and Commonwealth Exhibits CP-1 – Certificate of Imposition of Judgment

26

of Sentence dated August 10, 2011 and CP-2 - DC16E Form. *See also* N.T. 8/8/17, pp. 15-40.

*See also* Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated March 8, 2017; Motion for Leave to File Motion to Withdraw Guilty Plea and or for Modification of Sentence Nunc Pro Tunc [*sic*] dated March 8, 2017; Brief in Support of Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated May 30, 2017; Second Motion for Leave to Amend Petition for Post Conviction Collateral Relief dated May 30, 2017; and Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017. Furthermore, as it related to the specific defense argument that the concurrency of Defendant Rauso's sentence at bar to that imposed by the federal court demands the sentencing certificate for some otherwise unspecified reasons must include the language of 42 Pa.C.S. §9761, Ms. Wood, the Pennsylvania Department of Corrections' Chief Records Administrator, when so questioned at the evidentiary hearing (August 8, 2017) summarily rejected the same. N.T. 8/8/17, p. 36. *See also* Commonwealth Exhibits CP-1 – Certificate of Imposition of Judgment of Sentence dated August 10, 2011 and CP-2 - DC16E Form.

Not only does the combined testimony of Ms. Wood (Pennsylvania Department of Corrections) and Ms. Mayorga (Federal Bureau of Prisons) uncontradictedly demonstrate the Defendant received "the benefit of the bargain," Ms. Wood further related to the obvious and additional benefit of Defendant Rauso that because the department has determined the at bar sentence's maximum or expiration date is well before his federal sentencing's imprisonment concludes, he on his release from federal custody will not for any purposes be subject to a state correctional institution's commitment. *See* Commonwealth Exhibit CP-2 - DC16E Form. *See also* 42 Pa.C.S. §9761(b)(" ... [I]*f the defendant is released after the maximum time imposed*

27

*under the sentence of imprisonment he shall be deemed to have served his sentence.").* (Emphasis added).

In light of the foregoing, the Defendant's proffered allegations and/or other implications he contrary to plea negotiations did not receive at bar a sentence concurrent to that imposed by the federal court are wholly meritless and not a basis to now relieve him of his sentencing restitution payment condition. Defendant Rauso received his critical benefit of that which he bargained and he should not on the instant record be permitted having secured such to unilaterally abrogate that same plea agreement's corresponding obligation of obviously equal importance to the prosecution – the already paid restitution to his victim. *See* Certificate of Imposition of Judgment of Sentence. As the terms of the Defendant's counseled, negotiated plea of guilty as patently established at bar and recounted above and below were legally cognizable, the court accepted and directed the sentence to which the Commonwealth and defense agreed, " ' ... the parties and the court must abide by the terms of the plea agreement.' " *Commonwealth v. Anderson supra* 955 A.2d at 1191 *quoting Commonwealth v. Parsons supra* 969 A.2d at 1267-68 *citing Commonwealth v. Coles supra* 365 Pa.Super. at 571, 530 A.2d at 458 and *Commonwealth v. Reichle supra* 441 Pa.Super. at 4, 589 A.2d at 1141.

### *Validity and Defendant's Rauso's Knowledge and Acceptance of his Sentence's Restitution Payment Condition*

Via his vacate restitution motion and reconsideration of this court's denial of the same, Defendant Rauso also asserted the record at bar failed to support this court's restitution sentencing payment obligation. *See* Motion to Vacate Restitution, pp. 8-13; Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, pp. 2-14; and Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017, pp. 11-14.

28

Even a cursory review of the instant record patently reveals the payment of restitution was an express term of the guilty plea agreement, sufficiently supported in the context of a negotiated plea of guilty, and a sentencing condition of which the Defendant was most obviously aware. His arguments to the contrary are just meritless.

When the prosecutor, in open court, of-record, recited the plea agreement and its six thousand five hundred ($6,500.00) dollar restitution payment term, Defendant Rauso was also at the bar of the court and then standing literally within three (3) feet of the Commonwealth's attorney, separated only by defense counsel's presence. Likewise, the Defendant was so positioned on the prosecution orally motioning, of-record, and the court allowing, without defense objection, the amendment of Informations B (theft by deception[29]) and E (deceptive business practices[30]) to reflect as an additional victim, Carla Murray. N.T. 8/10/11, pp. 3, 4-8. *See also* Informations B and E. Defendant Rauso was yet still standing immediately to his lawyer's left when defense counsel confirmed for the court the assistant district attorney's statement of the guilty plea agreement's terms was accurate. N.T. 8/10/11, pp. 3, 8. In response to the court's direct query whether he wanted it to accept his guilty plea and its recommended sentence, which certainly included the already noted, of-record, six thousand five hundred ($6,500.00) dollar restitution, Defendant Rauso unequivocally replied, "Yes." N.T. 8/10/11, pp. 12-13. Furthermore, the Defendant was present when this court engaged in an of-record dialogue with the person to whom the restitution was payable, Carla Murray, about whether she would be satisfied with the prepaid restitution amount less a state fee. N.T. 8/10/11, pp. 3, 14-20. In light of the foregoing, the Defendant was well aware his payment of restitution was part of the negotiated plea agreement and would be a resultant sentencing condition. *See Commonwealth v. Pollard supra* 832 A.2d at 523-24 *citing Commonwealth v. Stork supra* 737

29

*A.2d* at 790 and *Commonwealth v. Cappelli supra* 340 Pa.Super. at 20-21, 489 A.2d at 819 *quoting Commonwealth v. Brown supra* 242 Pa.Super. at 247, 363 A.2d at 1253. *See also* N.T. 8/10/11, pp. 9-10, 12-13 and Defendant's Guilty Plea Statement.

Moreover, Defendant Rauso's knowledge that the plea agreement required restitution is undoubtedly demonstrated by his having then in fact previously paid to Delaware County Court Financial Services the six thousand five hundred ($6,500.00) dollars. N.T. 8/10/11, pp. 4-5. *See also* Order dated August 10, 2011.

Likewise, in the context of a counseled, negotiated guilty plea which the court accepted, including its imposition of the recommended sentence, the case record at bar for the restitution payment obligation contains adequate support.

The stipulated affidavit of probable cause clearly details the Defendant caused a six thousand five hundred ($6,500.00) dollar loss. *See* Criminal Complaint and Probable Cause Affidavit. *See also* N.T. 8/10/11, p. 12. Although the probable cause affidavit referenced a Brandi Murray, the prosecution when initially reciting the guilty plea's terms explained that the money the affidavit of probable cause described Defendant Rauso illegally receiving was that of both Brandi and Carla Murray and seemingly by these victims' agreement the prepaid restitution was to be disbursed to Carla Murray. N.T. 8/10/11, pp. 5-6. (Both Brandi and Carla Murray were present at the guilty plea hearing and after the Commonwealth's representation as to whom the prepaid restitution was to be released, each declined an opportunity to address the court. N.T. 8/10/11, pp. 3-8, 20-21.).

This court in light of the foregoing concluded there was a sufficient of-record basis for it to accept that term of the negotiated guilty plea agreement and relatedly direct that the six thousand five hundred ($6,500.00) dollars Defendant Rauso prepaid to Delaware County Court

30

Financial Services was as restitution to be disbursed to Carla Murray. N.T. 8/10/11, pp. 3-6, 14-20, 21. *See also* Criminal Complaint and Probable Cause Affidavit; Informations B and E; and 18 Pa.C.S. §1106(a)(c)(1)(i). *See also* Order dated August 10, 2011.

### *III. Conclusion*

Defendant Rauso has just failed in any salient manner to demonstrate his at bar sentencing restitution payment condition was anything other than legally proper. This sentencing term resulted from the Defendant's counseled, negotiated plea of guilty which in all material respects was lawful. *See* Defendant's Guilty Plea Statement; Informations B and E; and N.T. 8/10/11. *See also* 18 Pa.C.S. §1106(a)(c)("... [T]he offender shall be sentenced to make restitution ... . ... The court shall order full restitution. ... .") Defendant Rauso's claims that the payment of restitution was not an express and agreed upon condition of his plea bargained sentence and/or that he had no knowledge of the same are on the instant record simply fallacious, particularly recognizing he paid the same consistent with counsel's negotiations before his even pleading guilty and the disbursement of this prepaid amount was at the guilty plea hearing discussed in his direct presence to a notable length, of-record, between the court, the lawyers, and the then present victim. Certainly, and despite then being afforded opportunities once more to consult privately with his lawyer and/or the court's invitation to ask of it questions about his sentence, the Defendant unambiguously voiced his desire that this court accept both his guilty plea and the recommended sentence, including the restitution responsibility he now challenges. N.T. 8/10/11, pp. 3-8, 10, 12, 14-20, 22-23. *See also Commonwealth v. Pollard supra* 832 A.2d at 523-24 *citing Commonwealth v. Stork supra* 737 A.2d at 790 and *Commonwealth v. Cappelli supra* 340 Pa.Super. at 20-21, 489 A.2d at 819 *quoting Commonwealth v. Brown supra* 242 Pa.Super. at 247, 363 A.2d at 1253 ("Our law presumes that defendant who enters a guilty plea

31

was aware of what he was doing. He bears the burden proving otherwise. ... A defendant who elects to plead guilty has a duty to answer questions truthfully."). Likewise, any contentions that the restitution sentencing condition lacked in the context of the Defendant's negotiated plea of guilty a sufficient basis again is on the instant record meritless. *See* Criminal Complaint and Probable Cause Affidavit; Informations B and E; and N.T. 8/10/11, pp. 3-8, 14-20. Having enjoyed the obvious benefit of his plea bargain and receiving in the above-captioned a sentence wholly concurrent to and fully served well before he is eligible for release under his federal court sentence,[31] Defendant Rauso cannot now on the instant record unilaterally renege his corresponding restitution obligation, a payment he knowingly made as part of the plea agreement before even pleading guilty. *Commonwealth v. Anderson supra* 955 A.2d at 1191 *quoting Commonwealth v. Parsons supra* 969 A. at 1191 *quoting Commonwealth v. Parsons supra* 969 A.2d at 1267-68 *citing Commonwealth v. Coles supra* 353 Pa.Super. at 571, 530 A.2d at 458 and *Commonwealth v. Reichle supra* 441 Pa.Super. at 4, 589 A.2d at 1141. *See also* N.T. 8/8/17.

For all these reasons, this court's denial of Defendant Rauso's Motion to Vacate August 10, 2011 Restitution Order ... and reconsideration application of the same should be affirmed.

**BY THE COURT:**

Kevin F. Kelly     J.

DELAWARE CO. LAW CO. PA
MORRIS DIVISION
OFFICE OF

2011 DEC 29 PM 2: 03

FILED

32

[1] 18 Pa.C.S. §3922.

[2] 18 Pa.C.S. §4107.

[3] 18 Pa.C.S. §3922.

[4] 18 Pa.C.S. §4107.

[5] 18 Pa.C.S. §3922.

[6] 18 Pa.C.S. §4107.

[7] Numerous trial listings of the above-captioned matter were continued at the request of the defense, absent Commonwealth objection, seemingly to allow Defendant Rauso's federal prosecution to conclude with the apparent understanding that the instant case's resolution could very well be a function of the federal matter's outcome.

[8] 18 Pa.C.S. §3922.

[9] 18 Pa.C.S. §4107.

[10] *Id.*

[11] 18 Pa.C.S. §3922.

[12] 18 Pa.C.S. §4107.

[13] 61 Pa.C.S. §§4501 *et seq.*

[14] The Defendant on July 16, 2012, lodged a self-represented Petition for Post Conviction Collateral Relief. *See* Defendant's PCRA Petition dated July 16, 2012. This petition being his first such collateral pleading Defendant Rauso was entitled to counsel's assistance. *See generally Commonwealth v. Luckett*, 700 A.2d 1014, 1016 (Pa.Super. 1997); *Commonwealth v. Perez*, 799 A.2d 848, 851-52 (Pa.Super. 2002) *citing Commonwealth v. Guthrie*, 749 A.2d 502, 504 (Pa.Super. 2000); *Commonwealth v. Ferguson*, 722 A.2d 177, 179 (Pa.Super. 1998); *Commonwealth v. Hampton*, 718 A.2d 1250, 1252-53 (Pa.Super. 1998); and *Commonwealth v. Ramos*, 14 A.3d 894, 895-96 (Pa.Super. 2011).

Defendant Rauso was previously court designated two (2) lawyers material to the PCRA proceedings. Following the respective breakdowns of attorney-client relations between the Defendant and these lawyers, he per such an application was permitted to proceed *pro se* with Barry W. VanRensler, Esquire serving as his "standby counsel." *See* Order dated July 19, 2012; Application to Withdraw Appearance dated June 10, 2013; Order dated July 31, 2013; Defendant's Motion for Leave to Proceed Pro Se [*sic*] dated August 7, 2015; N.T. 8/28/15; Order dated September 1, 2015. *See also Commonwealth v. Grazier*, 552 Pa. 9, 12-13, 713 A.2d 81, 82 (1998). *See generally* Pa.R.Crim.P. 121.

Following the filing of his initial collateral petition, Defendant Rauso lodged a plethora of various self-represented and a significantly lesser number of counseled pleadings during his PCRA litigation. *See* Defendant's *Pro Se* PCRA Petition dated July 16, 2012. *See also* Defendant's *Pro Se* Praecipe dated June 10, 2013; Defendant's *Pro Se* Praecipe dated July 1, 2013; Defendant's *Pro Se* Motion to Order Counsel to File a Memorandum of Law dated March 12, 2014; Defendant's *Pro Se* Praecipes dated September 10, 2014, September 29, 2014, and November 14, 2014; Defendant's *Pro Se* Praecipe dated December 3, 2014; Defendant's *Pro Se* Praecipe dated February 6, 2015; Defendant's *Pro Se* Praecipe dated March 17, 2015; Defendant's *Pro Se* Praecipe dated May 11, 2015; Defendant's *Pro Se* Praecipe dated July 13, 2015; Defendant's *Pro Se* Praecipe dated July 28, 2015; Defendant's *Pro Se* Motion for Leave to Proceed Pro Se [*sic*] dated August 7, 2015; Defendant's *Pro Se* Praecipe dated October 30, 2015; Defendant's *Pro Se* Motion for an Extension of Time By Which to File an Amended Petition for Post Conviction Collateral Relief dated October 30, 2015; Defendant's *Pro Se* Second Motion for Extension of Time dated December 30, 2015; Defendant's *Pro Se* Motion to Correct the Judgment of Conviction ... dated January 21, 2016; Defendant's *Pro Se* Brief In Support of Motion to Correct Judgment ... dated January 21, 2016; Defendant's *Pro Se* Motion to Either Stay the Presently Pending Petition for Post Conviction Collateral Relief ... dated March 31, 2016; Defendant's *Pro Se* Motion for Leave to File a Reply to the Commonwealth's Answer ... dated April 28, 2016 (Although not granted leave by this court, Defendant Rauso jointly lodged with his Motion for Leave to File a Reply to the Commonwealth's Answer ... a Reply to the Commonwealth's Answer to Defendant's Motion to Correct the Judgment of Conviction Etc. Reply to the Commonwealth's Answer to Defendant's Motion to Correct the Judgment of Conviction Etc. dated April 28, 2016.); Defendant's *Pro Se* Reply to the Commonwealth's Answer ... dated April 28, 2016; Defendant's *Pro Se* Praecipe to File Enter and Docket April 28, 2016, Letter Motion ... dated April 28, 2016; Defendant's *Pro Se* Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016; Defendant's

*Pro Se* Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016; Defendant's *Pro Se* Praecipe to File, Enter and Docket January 31, 2017 Letter ... dated February 3, 2017; Defendant's *Pro Se* Second Motion to Correct Docket Entries dated February 3, 2017; Brief Supporting Second Motion to Correct Docket Entries dated February 3, 2017; Defendant's *Pro Se* Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017; Defendant's *Pro Se* Praecipe to File, Enter and Docket the Judgement [*sic*] of Sentence Entered in the Case dated February 22, 2017; Defendant's *Pro Se* Motion for Leave to File Motion to Withdraw Guilty Plea and or for Modification of Sentence Nunc Pro Tunc [*sic*] dated March 8, 2017; Defendant's *Pro Se* Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated March 8, 2017; Defendant's *Pro Se* Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017; Defendant's *Pro Se* Motion to Rescind, Modify And Or Reconsider This Court's February 27, 2017 Order Denying Defendant's Application for the Amendment of the Certificate of Imposition of Judgment of Sentence [*sic*] dated March 22, 2017; Defendant's *Pro Se* Motion to Modify And Or Reconsider February 27, 2017 Order Which Denied Defendant's Motion to Stay ... [*sic*] dated March 22, 2017; Defendant's Pro Se [*sic*] Praecipe to File, Enter and Docket February 24th, 2017 Transcripts of Proceedings dated March 23, 2017; Defendant's *Pro Se* Praecipe to File, Enter and Docket Emails Sent to Stand-by Counsel dated March 30, 2017; Defendant's *Pro Se* Praecipe to File, Enter and Docket True, Correct and Complete Copies of the Docket dated March 30, 2017; Defendant's *Pro Se* Praecipe to File, Enter and Docket True, Complete and Correct Copies of the Docket Entries dated June 8, 2016 and March 29, 2017 dated April 27, 2017; Defendant's *Pro Se* Third Motion to Correct Docket and to Bifurcate Evidence Admitted During the March 30, 2017 Hearing dated April 27, 2017; Defendant's *Pro Se* Second Motion for an Extension of Time by Which to File a Brief in Support of His Motion to Withdraw Guilty Plea and or for Modification of Sentence; Alternatively to File Said Motion Nunc Pro Tunc [*sic*] dated April 27, 2017; Defendant's *Pro Se* Notices of Appeal dated May 4, 2017; Defendant's *Pro Se* Brief in Support of Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated May 30, 2017; Defendant's *Pro Se* Second Motion for Leave to Amend Petition for Post Conviction Collateral Relief dated May 30, 2017; Defendant's Counseled Extension Application dated July 14, 2017; and Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017.

At the listing of June 14, 2017, *inter alia,* the Defendant orally advanced, of-record, an application for the re-appointment of Post Conviction Relief Act counsel. N.T. 6/14/17.

Via an order dated June 15, 2017, this court designated William P. Wismer, Esquire as Defendant Rauso's collateral attorney and directed he file an amended PCRA pleading no later than July 14, 2017. *See* Order dated June 15, 2017. *See generally Commonwealth v. Luckett supra* 700 A.2d at 1016; *Commonwealth v. Perez supra* 799 A.2d at 851-52 *citing Commonwealth v. Guthrie supra* 749 A.2d at 504; *Commonwealth v. Ferguson supra* 722 A.2d at 179; *Commonwealth v. Hampton supra* 718 A.2d at 1252-53; and *Commonwealth v. Ramos supra* 14 A.3d at 895-96. *See generally* Pa.R.Crim.P. 905(A). This court through another order also of June 15, 2017, relatedly allowed that Mr. VanRensler was relieved of his past appointment as the Defendant's "standby counsel." *See* Order dated June 15, 2017. *See also* Order dated September 1, 2015.

On July 14, 2017, Mr. Wismer lodged an extension application seeking until July 17, 2017, to file the past instructed, amended collateral pleading. *See* Extension Application dated July 14, 2017. In an order of that same date (July 14, 2017), the court granted the defense's extension request. *See* Order dated July 14, 2017.

Defendant Rauso on July 17, 2017, lodged his Amended, Counseled Petition for Post Conviction Relief. *See* Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017.

An evidentiary hearing as then scheduled in the above-captioned matter regarding Defendant Rauso's counseled, amended PCRA filing commenced and concluded on August 8, 2017, before this court. *See* Hearing Notice dated July 21, 2017. *See also generally* Pa.R.Crim.P. 908(A)(2).

At the beginning of this proceeding (August 8, 2017), the Defendant's collateral lawyer once more confirmed of-record, knowing he had a right to be physically present and appreciating that should he choose not to appear in person Defendant Rauso's ability to effectively advance certain PCRA claims may very well be limited given the only available electronic means to participate was that of telephone, the Defendant after further consultation with his

collateral attorney opted to appear and participate at this hearing (August 8, 2017) via telephone, an election consistent with his stated and preferred such practices. The Defendant relatedly, of-record, acknowledged the same and confirmed he would again be appearing and participating for purposes of this listing by telephone. N.T. 8/8/17, p. 5-6. *See* Defense Exhibit D-1 – Mr. Wismer's Letter dated July 26, 2017, and Correspondence dated July 21, 2017. *See also* Amended, Counseled Petition for Post Conviction Relief ... dated July 17, 2017, pp. 5-10; Praecipe to File, Enter and Docket January 31, 2017 Letter ... dated February 3, 2017; Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017, and Proposed Hearing Notice; Motion to Modify And Or Reconsider February 27, 2017 Order Which Denied Defendant's Motion to Stay ... [*sic*] dated March 22, 2017, and Proposed Hearing Notice; and Motion to Rescind, Modify And Or Reconsider This Court's February 27, 2017 Order Denying Defendant's Application for the Amendment of the Certificate of Imposition of Judgment of Sentence [*sic*] dated March 22, 2017, and Proposed Hearing Notice. *See generally* Pa.R.Crim.P. 119.

Per an order dated August 9, 2017, this court denied Defendant Rauso's Amended, Counseled Petition for Post Conviction Relief ... . *See* Order dated August 9, 2017. *See also* Amended, Counseled Petition for Post Conviction Relief dated July 17, 2017. The Defendant did not lodge an appeal from this court's denial of his amended, counseled PCRA petition. *See* Order dated August 9, 2017.

[15] Defendant Rauso throughout the collateral litigation and restitution payment challenge before this court was incarcerated at FCI Schuylkill resulting from his June 20, 2011, sentence past imposed by the District Court of the Eastern District of Pennsylvania under the docket, *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001, an aggregate period of incarceration of one hundred sixty (160) months followed by three (3) years supervised release. *See United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania. Through his Praecipe to File, Enter and Docket January 31, 2017 Letter ... and other various pleadings, Defendant Rauso confirmed his past voiced preference to appear in any hearings at bar via telephone, the only electronic inmate hearing participation means federal penal authorities made available to this court.

The scheduling of a date certain for any of these electronic listings necessitated that Delaware County Legal and Audio Visual Office staff contact directly the Defendant's assigued FCI counselor and a measure of time was needed given this person's other professional commitments to finalize any such arrangements. *See* Praecipe to File, Enter and Docket January 31, 2017 Letter ... dated February 3, 2017. *See also* Motion for Leave to File Motion to Withdraw Guilty Plea and or for Modification of Sentence Nunc Pro Tunc [*sic*] dated March 8, 2017 – Proposed Hearing Notice; Motion to Withdraw Guilty Plea and or Modification of Sentence ... Nunc Pro Tunc [*sic*] dated March 8, 2017 - Proposed Hearing Notice; and Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017, and Proposed Hearing Notice. *See generally* Pa.R.Crim.P. 119.

[16] The Defendant on May 4, 2017, contemporaneously lodged a second appeal notice stemming from this court denying his application for the amendment of the certificate of imposition of judgment of sentence and his sentencing certificate amendment reconsideration's refusal. *See* Notice of Appeal dated May 4, 2017, and Superior Court No. 1460 EDA 2017. *See also* Motion to Modify And Or Reconsider This Court's February 27, 2017 Order Denying Defendant's Application for the Amendment of the Certificate of Imposition of Judgment of Sentence [*sic*] dated March 22, 2017; Motion to Correct the Judgment of Conviction ... dated January 21, 2016; Brief in Support of Motion to Correct Judgment ... dated January 21, 2016; and Reply to the Commonwealth's Answer ... dated April 20, 2016. (This appeal before the Superior Court under docket No. 1460 EDA 2017 was withdrawn by the Defendant through his lodging of such a Praecipe for Discontinuance on August 25, 2017. *See* Superior Court No. 1460 EDA 2017.)

By an order of June 9, 2017, the Superior Court recognized that Defendant Rauso had past filed (2) notices of appeal, but for whatever the reasons its prothonotary's office was only in receipt of one (1) appeal notice. *See* Superior Court No. 1460 EDA 2017, Order dated June 9, 2017. The appellate court via its order (June 9, 2017) thus directed the trial court to forward " ... any other notice of appeal in its possession filed by Appellant." *See* Superior Court No. 1460 EDA 2017, Order dated June 9, 2017. This court per an order of June 13, 2017, instructed " ... that the Delaware County Office of Judicial Support **SHALL IMMEDIATELY** send to the Pennsylvania Superior Court's Prothonotary the Defendant's Notice of Appeal dated May 4, 2017, relevant to this court denying the

Defendant's motion to vacate his restitution sentencing payment obligation, as well as his vacating of restitution reconsideration's denial. *See* Notice of Appeal dated May 4, 2017. *See also* Orders dated February 27, 2017, and April 24, 2017." *See* Order dated June 13, 2017. *See also* Superior Court No. 1792 EDA 2017.

[17] Although the relevant Pennsylvania rule of appellate procedure provides a trial court may instruct a defendant to lodge a statement of error assignments, it is not required to take such action. *See* Pa.R.A.P. 1925(b)("If the judge entering the order giving rise to the notice of appeal ('judge') desires clarification of the errors complained of on appeal, the judge *may* enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ('Statement').")(Emphasis added.).

Requiring on the salient record no such additional clarification material to the appellate court review of its denial of his Motion to Vacate August 10, 2011 Restitution Order and related reconsideration motion of the same's rejection, this court has elected not to direct Defendant Rauso to lodge an appellate complaints statement. *See* Notice of Appeal dated May 4, 2017. *See also* Orders dated February 27, 2017, and April 24, 2017; Motion to Vacate, Rescind ... This Court's February 27, 2017 Order Denying Defendant's Motion to Vacate August 10, 2011 Restitution Order ... [*sic*] dated March 22, 2017; Motion to Vacate August 10, 2011 Restitution Order ... dated June 9, 2016, Defendant's Brief in Support of Motion to Vacate Augnst 10, 2011 Restitution Order ... dated June 9, 2016; Defendant's Supplemental Brief in Support of Motion to Vacate August 10, 2011 Restitution Order ... dated February 22, 2017; N.T. 2/24/17; N.T. 3/30/17; and N.T. 8/8/17.

[18] *See* Certificate of Imposition of Judgment of Sentence and *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.

[19] Pa.R.Crim.P. 590.

[20] A review of the guilty plea hearing's (August 10, 2011) audio recording shows this question of the court to be as follows: "Would you like any more time to further talk privately with Mr. Bros [*sic*] about any of the rights and/or related information that Guilty Plea Statement discusses?"

[21] 18 Pa.C.S. §3922.
[22] 18 Pa.C.S. §4107.

[23] *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.

[24] *See* Certificate of Imposition of Judgment of Sentence and *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.

[25] *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.
[26] *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.
[27] *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.

[28] Not only was the testimony of both these prosecution witnesses uncontradicted, this court found the above summarized testimonial evidence of each Commonwealth witness to be otherwise credible.

[29] 18 Pa.C.S. §3922.
[30] 18 Pa.C.S. §4107.

[31] *United States v. Rauso*, No. DPAE 2: 10 CR 000406-001 – United States District Court-Eastern District of Pennsylvania.